**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| NAUTILUS INSURANCE CO., § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. H-04-2986 | |
| § | | |
| NEVCO WATERPROOFING, INC., § | | |
| Defendant § | | |

**MEMORANDUM AND ORDER**

Pending before the Court in this insurance coverage dispute is a Motion for Summary Judgment [Doc. # 22] ("Evanston's Motion") filed by Third-Party Defendant Evanston Insurance Co. ("Evanston"). Third-Party Plaintiff Nevco Waterproofing, Inc. ("Nevco") and Counter-Defendants Concierge Care Nursing Centers, Inc. and Houston Concierge Care, L.P. (collectively, "Concierge") have filed a Joint Response [Doc. # 29].[1] This motion is ripe for decision. Having considered the parties' submissions, all matters of record, and the applicable legal authorities, the Court concludes that Evanston's motion should be **granted**.

**I.   BACKGROUND**

Nevco was the beneficiary of a liability insurance policy with Plaintiff Nautilus Insurance Co. ("Nautilus") covering the period June 16, 2000 to June 16, 2001. During this time, Nevco performed waterproofing and joint sealing on behalf of Brae Burn Construction

---

[1]   Evanston has filed a Reply in support of its Motion [Doc. # 33], Nevco and Concierge have filed a Joint Supplemental Response [Doc. # 37], and Evanston has filed a Supplemental Reply [Doc. # 38].

Co. ("Brae Burn"), a general contractor, in the construction of a nursing home in Houston, Texas. Concierge owned the nursing home facility that Brae Burn, together with various subcontractors, built. Brae Burn, Nevco, and others completed construction in September, 2000, and residents began to move into the facility in October 2000. Until July 2001, residents were pleased with the accommodations and the project was profitable.

Eight months after the construction was complete, Evanston issued a liability insurance policy ("the Policy") to Nevco. The Policy provided coverage from June 16, 2001 to June 16, 2002. Concierge discovered mold behind wall coverings in the nursing home facility "[a]round July 5, 2001,"[2] during the period of Evanston's coverage. Brae Burn undertook mold remediation efforts but failed, and Concierge informed its residents on February 5, 2002, that, due to the mold, they would no longer be able to live in the facility.

Concierge filed a lawsuit, styled *Concierge Care Nursing Centers, Inc. v. Adams Insurance Services, Inc.*, Cause No. 2002-15652, in the 151st District Court of Harris County, Texas. The lawsuit names multiple defendants, including Nevco. Concierge's latest amended petition alleges that the actions of Nevco and others "combined to injure [Concierge] by permitting significant quantities of water to intrude into the [facility]. This water intrusion inevitably led to the growth of mold throughout the [facility] and rendered

---

[2] Plaintiffs' Seventh Amended Original Petition, Cause No. 2002-15652, *Concierge Care Nursing Centers, Inc. v. Adams Ins. Serv., Inc.*, In the 151st District Court of Harris County, Texas, at 11.

the [facility] unfit for its intended purpose as a nursing home."[3] Concierge's petition alleges that Nevco performed its waterproofing and joint sealing services in a negligent manner, and that Nevco breached its implied warranty by failing to perform its services in a good and workmanlike manner.

Nevco tendered Concierge's mold damage claim to Nautilus and Evanston. Evanston denied the claim. Nautilus has defended Nevco against Concierge's suit, but filed the instant declaratory judgment action against Nevco, seeking a judgment that it has no duty to defend or indemnify. Nevco filed a third-party claim against Evanston, seeking a determination of what obligations, if any, Evanston owes to Nevco under the Policy. Evanston in this motion seeks judgment as a matter of law that it has no duty to defend or indemnify under the "eight corners rule."

## II.   SUMMARY JUDGMENT STANDARDS

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In deciding a motion for summary judgment, the Court must determine whether "the

---

[3]   *Id*. at 18.

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002). An issue is material if its resolution could affect the outcome of the action. *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). In deciding whether a fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Hotard v. State Farm Fire & Cas. Co.,* 286 F.3d 814, 817 (5th Cir. 2002). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy – that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). The movant meets this initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Id*. If the movant meets this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1998)).

A dispute over a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. (quoting *Smith v. Brenoettsky*, 158 F.3d 908, 911 (5th Cir. 1998)); *see also Quorum Health Resources, L.L.C. v. Maverick County Hosp. District*, 308 F.3d 451, 458 (5th Cir. 2002).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that "unsworn pleadings do not constitute proper summary judgment evidence," quoting *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994)). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Id.* Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

### III.   THE DUTY TO DEFEND AND INDEMNIFY

#### A.   Duty to Defend

A liability insurance policy consists, generally, of three parts: (1) the insuring agreement, which is the affirmative grant of coverage that sets forth who and what are

covered; (2) the exclusions, which limit the insuring agreement's coverage; and (3) the conditions, which set forth a procedural framework for how the parties will conduct their dealings in the event of a loss.

Under Texas law, an insurer is required to defend its insured in any case in which at least some of the allegations in the pleadings potentially state a claim covered by the policy. *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993). The insured bears the burden of showing that the claim against it is potentially within the policy's affirmative grant of coverage. *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996). If the insurer relies on the policy's exclusions to deny coverage, the burden shifts to the insurer to prove the exclusion applies. TEX. INS. CODE ANN. art. 21.58(b) (Vernon Supp. 2004-2005); *New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195, 1199 (5th Cir. 1993). If the insurer is successful, the burden shifts back to the insured to show that an exception to the exclusion brings the claim potentially within the scope of coverage under the insurance policy. If there is "doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in [the] insured's favor." *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

"The duty to defend is broader than the duty to indemnify under Texas law," which the parties agree applies in this case. *See id.* (citing *American States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998)). "An insurer's duty to defend is determined solely by the

allegations in the pleadings and the language of the insurance policy. This is the 'eight corners' or 'complaint allegation rule.' If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *Id.* (quoting *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)). Put another way, under the "eight corners rule," the duty to defend arises if the complaint, taken as true and construed broadly, asserts a claim within the policy terms. *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Merchants Fast Motor Lines,* 939 S.W.2d at 141.

In determining whether an insurer has a duty to defend its insured, Texas courts look to the allegations in the underlying lawsuit and the terms of the insurance contract. *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001) (citing *Employers Cas. Co. v Block*, 744 S.W.2d 940, 945 (Tex. 1988)).[4] "The duty to defend is determined by consulting the latest amended pleading." *Northfield Ins. Co. v. Loving Home Care*, 363 F.3d 523, 528 (5th Cir. 2004) (citing *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996)). "The focus of the inquiry is on the alleged facts, not on the asserted legal theories." *Id.* (citing *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Tex.*, 249 F.3d 389, 392 (5th Cir. 2001)). Determination of the duty to defend is based on an examination of the petition in the underlying action, without regard

---

[4] The duty is not affected by facts ascertained before suit or developed in the process of litigation, or by the outcome of the suit. *Taylor v. Travelers Ins. Co.*, 40 F.3d 79, 81 (5th Cir. 1994).

to the truth or falsity of the allegations asserted therein. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex. 1965). More specifically, "the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged." *Merchants Fast Motor Lines,* 939 S.W.2d at 141; *accord Bailey*, 133 F.3d at 369. "If the petition only alleges facts excluded by the policy, . . . the insurer is not required to defend." *Loving Home Care*, 363 F.3d at 528 (citing *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982)). If the complaint in the underlying action alleges multiple claims or claims in the alternative, some of which are covered under the policy and some of which are not, the duty to defend arises if at least one of the claims in the complaint is facially within the policy's coverage. *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir. 1983). "Courts must resolve all doubts regarding the duty to defend in favor of the duty." *King*, 85 S.W.3d at 187; *accord Loving Home Care*, 363 F.3d at 528 ("[I]n case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in [the] insured's favor." (quoting *Merchants Fast Motor Lines*, 939 S.W.2d at 141)).

**B.    Duty to Indemnify**

The duty to provide indemnity is separate and distinct from the duty to defend. *American Alliance Ins. Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 153 (Tex. App.--Dallas 1990, writ dismissed). "The duty to indemnify is based, not upon the pleadings, but upon the actual facts which underlie and result in the liability." *Id.* Thus, the duty to indemnify is

narrower than the duty to defend. *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 393 (5th Cir. 1995).

## IV.   ANALYSIS

### A.   Which Policy Applies?

Before addressing the merits, the Court must address Nevco and Concierge's argument regarding which Evanston Policy applies to this case. With its Motion for Summary Judgment, Evanston erroneously submitted the wrong insurance policy. The policy Evanston should have attached to its motion is Policy CL420900657 covering the June 16, 2001 to June 16, 2002 policy period. The Court has granted Evanston's Request for leave to supplement the summary judgment record to include the correct policy. Nevco and Concierge argue that a question of fact exists as to the applicable policy, in that the summary judgment record reflects conflicting insurance policies submitted by Evanston, each supported by a verifying affidavit. However, supporting affidavits submitted with Evanston's Request for Leave to Supplement the Summary Judgment Record clearly explain the clerical mishap. Nevco and Concierge have offered no evidence to the contrary, other than the initial erroneous affidavit that Evanston has recanted. Moreover, Nevco has admitted in its answer to Evanston's counterclaim that Policy CL420900657 was issued for the 2001-2002 period, and that that Policy contains the Contractor Limitation Endorsement. *See* Answer to Counter-Claim, ¶¶ 2, 3 [Doc. # 18]; Counterclaim, ¶¶ 6, 7 [Doc. # 9]. The Court concludes that there is no genuine issue of fact that it is Policy CL420900657 that governs the claims in this case.

**B.     Contractor Limitation Endorsement**

Evanston denied coverage under the Nevco Policy for the period covering June 16, 2001 to June 16, 2002 based upon several policy provisions. In the motion before the Court, Evanston asserts that (1) a Contractor Limitation Endorsement to the Policy expressly precludes coverage for any loss "caused by the invasion or existence of water or moisture"; (2) the Contractor Limitation Endorsement also bars coverage for any loss that "first occurred, began to occur, or is alleged to have occurred, to any degree, prior to the inception date of the policy"; (3) Exclusion "j(6)" precludes coverage for property damage to that "particular part of any property that must be restored, repaired or replaced because '[Nevco's] work' was incorrectly performed on it"; and (4) allegations of faulty workmanship do not constitute an occurrence triggering liability under the Policy. The Court concludes that Evanston has no duty to defend or indemnify Nevco under the Policy.

Evanston asserts that the subpart 4 of the Contractor Limitation Endorsement to the Policy expressly precludes coverage for faulty construction that allows water or moisture to cause mold-related property damage. As discussed above, under the "eight corners" rule, an insurer is not legally required to defend a suit against its insured if the underlying petition fails to allege facts within the scope of coverage. Evanston points to numerous places in Concierge's petition in which Concierge alleges that its mold-related property damage arose because faulty construction allowed water to intrude into the facility. For instance Concierge's petition states that [a]round July 5, 2001," Concierge identified the presence of

mold in the facility. Concierge later "identified numerous areas . . . where mold appeared."[5] The facility's "residents were told that, because of the presence of mold . . . and because of some of the defendants['] failure to repair the damage," they would have to vacate the facility.[6] The petition alleges that Nevco's wrongful acts caused Concierge "to suffer significant damages, including . . . damage to the physical structure of [the facility] caused by water intrusion and mold."[7] Nevco is accused of breaching "a duty at common law to exercise reasonable care in performing services and providing materials," and of failing to

---

[5] *See* Plaintiffs' Seventh Amended Original Petition, Cause No. 2002-15652, *Concierge Care Nursing Centers, Inc. v. Adams Ins. Serv., Inc*., In the 151st District Court of Harris County, Texas, ¶ 50. The paragraph states in full:

> 50.  Around July 5, 2001, Houston Concierge Care identified the presence of mold behind wall coverings and other areas at the Concierge and promptly informed Brae Burn and Morris in order to institute remediation efforts. Eventually, Houston Concierge Care identified numerous areas within The Concierge where mold appeared.

[6] *See id.* ¶ 52:

> 52.  On Tuesday, February 5, 2002, The Concierge's residents were told that, because of the presence of mold at The Concierge and because of some of the defendants['] failure to repair the damage they caused and permit The Concierge to return to business-like operations, residents would no longer be able to live at The Concierge.

[7] *See id.* ¶ 53:

> 53.  The defendants' wrongful acts caused Plaintiffs to suffer significant damages, including, by way of example and not limitation, damage to the physical structure of The Concierge caused by water intrusion and mold, expenses incurred in investigation and remediation efforts, and business losses caused by the defects in construction of the facility and the need to close large portions of the facility to permit remediation and repair, and then, ultimately, to close the entire facility.

"perform their services in a good and workmanlike manner."[8] The petition alleges that the wrongful actions of Nevco and others "combined to injure Plaintiffs by permitting significant quantities of water to intrude into the Concierge. This water intrusion inevitably led to the growth of mold throughout the Concierge and rendered the Concierge unfit for its intended purpose as a nursing home.[9]

It is apparent from the petition that Concierge's negligence claim (paragraph 57) and its breach of implied warranty claim (paragraph 64) – Concierge's only claims against Nevco – both require Concierge to prove that Nevco's workmanship or selection of materials was faulty. All of the damages that Concierge claims (paragraph 77) arise out of "water intrusion" and the resulting "mold." It is against this backdrop of allegations of faulty

---

[8]  *See id.* ¶¶ 57, 59:

>  57.  The Construction Defendants [including Nevco] . . . owed Plaintiffs a duty at common law to exercise reasonable care in performing services and providing materials. The Construction Defendants . . . breached the duties owed by them to Plaintiffs.
>
>  \* \* \* \*
>
>  64.  The Construction Defendants [including Nevco] . . . sold goods and/or services to the Plaintiffs. The Construction Defendants' . . . goods and/or services consisted of the repair or modification of the Plaintiffs' existing property. The Construction Defendants. . .did not perform their services in a good and workmanlike manner.

[9]  *See id.* ¶ 77:

>  77.  The wrongful actions of . . . Nevco [and others] combined to injure Plaintiffs by permitting significant quantities of water to intrude into the Concierge. This water intrusion inevitably led to the growth of mold throughout the Concierge and rendered the Concierge unfit for its intended purpose as a nursing home.

workmanship, allowing water to intrude and cause mold-related property damage, that the Court examines the Policy at issue.

>Subpart 4 of the Policy's Contractor Limitation Endorsement provides:
>
>The coverage under this policy does not apply to . . . "property damage" . . . arising out of inadequate, improper, faulty or defective construction:
>
>* * * *
>
>4.  Caused by the invasion or existence of water or moisture including but not limited to mold, mildew, rot and deterioration of the property.

"Property damage" is defined as including "[p]hysical injury to tangible property, including all resulting loss of use." With this language, the exclusion specifically precludes coverage for the type of claims Concierge alleges in its operative petition. Concierge's petition alleges (1) property damage, (2) Nevco's faulty workmanship, and (3) resulting mold. Concierge's allegations in its petition clearly fall within the subpart 4 of the Policy's Contractor Limitation Endorsement. Nevco's claim against Evanston for insurance coverage under the Policy is therefore expressly excluded.

Nevco and Concierge insist that even if some of the claims are excluded, Evanston has a duty to defend if even one cause of action is alleged that is not excluded. It is true that "[c]ourts must resolve all doubts regarding the duty to defend in favor of the duty." *King*, 85 S.W.3d at 187. However, Nevco and Concierge fail to identify any particular claims that are not excluded by subpart 4 of the Contractor Limitation Endorsement. They attempt to argue that subpart 4 does not exclude all mold, only mold caused by the invasion or existence of water or moisture. Contrary to Nevco and Concierge's assertion, there is no allegation in

the petition that the mold resulted from a defective product such as wall coverings or the adhesive used on the wall coverings, as Nevco asserts. In any event, it stands to reason that even if the adhesive somehow caused the mold, it could have done so only because of the existence of moisture. It flies in the face of common sense to imagine that mold could manifest in the absence of moisture. Texas law precludes the Court from reading such logically unfounded assertions into the pleadings, particularly in the absence of supporting allegations in the petition.

Nevco and Concierge also argue that subpart 4 of the Contractor Limitation Endorsement is ambiguous. They claim that the exclusion could refer to "property damage" "caused by the invasion or existence of water or moisture," or it could refer to ". . . defective construction" "caused by the invasion or existence of water or moisture." Under the latter construction, Nevco and Concierge argue that the exclusion would not apply because Concierge did not allege that the invasion or existence of water or moisture caused the defective construction, as would be required to trigger the exclusion. The Court is unpersuaded. It is nonsensical to interpret the exclusion as applying to defective construction caused by the invasion or existence of water or moisture. As explained above, the Court reads the defective construction language as a limitation on the exclusion: Property damage caused by the invasion or existence of water or moisture is excluded only if the invasion or existence of the moisture arose out of defective construction.

Finally, Nevco makes an appeal to the Court's concern for fairness. Nevco is in the business of water proofing the exterior of buildings. If Evanston's interpretation of subpart

4 is accepted, Nevco would be unprotected against its most common and most serious risks. A court "must presume that the objective of the insurance contract is to insure, and . . . should not construe the policy to defeat that objective unless language requires it." *Goswick v. Employers' Cas. Co.,* 440 S.W.2d 287, 289 (Tex. 1969). The Court is unpersuaded. Here, the unambiguous language of the policy very clearly excludes coverage against Concierge's mold damage claims. "[U]nder Texas law, a person is obligated to protect himself by reading what he signs and, absent fraud, may not excuse himself from the consequences of failing to meet that obligation." *In re Media Arts Group, Inc.*, 116 S.W.3d 900, 908 (Tex. App. – Houston [14th Dist.] 2003, pet. denied). The Court holds that subpart 4 of the Contractor Limitation Endorsement operates to exclude Nevco's claim under the Policy, and, therefore, Evanston does not have a duty to defend Nevco in Concierge's underlying lawsuit. Further, the Court concludes that Evanston does not have a duty to indemnify Nevco because in this case "*the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify*." *Northfield Ins. Co. v. Loving Home Care*, 363 F.3d 523, 529 (5th Cir. 2004) (quoting *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997)) (emphasis in original).

   Evanston also argues that subpart 1 of the Contractor Limitation Endorsement bars coverage for any loss that "first occurred, began to occur, or is alleged to have occurred, to any degree, prior to the inception date of the policy"; that Exclusion "j(6)" to the Policy precludes coverage for property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because '[Nevco's] work' was incorrectly performed on it.";

and that allegations of faulty workmanship do not constitute an "occurrence" triggering liability under the policy. Having found for Evanston on its Contractor Limitation Endorsement Subpart 4 defense, the Court does not reach these other issues. *See Hi-Port, Inc. v. American Int'l Specialty Lines Ins. Co.*, 22 F. Supp. 2d 596, 599 (S.D. Tex. 1997) (holding that any single exclusion is sufficient to exclude coverage).

## V. CONCLUSION AND ORDER

The Court concludes that subpart 4 of the Contractor Limitation Endorsement operates to exclude Nevco's claim under the Policy, and, therefore, Evanston does not have a duty to defend Nevco in Concierge's underlying lawsuit. Further, the Court holds that Evanston does not have a duty to indemnify Nevco. Accordingly, the Court holds in favor of Evanston and against Nevco and Concierge. It is hereby

**ORDERED** that Third-Party Defendant Evanston's Motion for Summary Judgement [Doc. # 22] is **GRANTED.**

SIGNED at Houston, Texas, this **19th** day of **April, 2005.**

_____
Nancy F. Atlas
United States District Judge