**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| NAUTILUS INSURANCE CO., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-2986 |
| | § | |
| NEVCO WATERPROOFING, INC., | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court in this insurance coverage dispute is a Motion for Summary Judgment [Doc. # 24] ("Plaintiff's Motion") filed by Plaintiff Nautilus Insurance Co. ("Nautilus"). Defendant Nevco Waterproofing, Inc. ("Nevco") and Counter-Defendants Concierge Care Nursing Centers, Inc. and Houston Concierge Care, L.P. (collectively, "Concierge") have filed a Joint Response [Doc. # 30]. Nautilus has filed a Reply in support of its Motion [Doc. # 31]. This motion is ripe for decision. Having considered the parties' submissions, all matters of record, and the applicable legal authorities, the Court concludes that Nautilus's motion should be **denied**.

## I.     BACKGROUND

Nevco was the beneficiary of a liability insurance policy with Nautilus covering the period June 16, 2000 to June 16, 2001. During this time, Nevco performed waterproofing and joint sealing on behalf of Brae Burn Construction Co. ("Brae Burn"), a general contractor, in the construction of a nursing home in Houston, Texas. Concierge owned the

nursing home facility that Brae Burn, together with various subcontractors, built. Brae Burn, Nevco, and others completed construction in September, 2000, and residents began to move into the facility in October 2000. Until July 2001, residents were pleased with the accommodations and the project was profitable.

Eight months after the construction was complete, Evanston Insurance Co. ("Evanston") issued a liability insurance policy to Nevco. Evanston's policy provided coverage from June 16, 2001 to June 16, 2002. Concierge identified mold behind wall coverings in the nursing home facility "[a]round July 5, 2001."[1] Brae Burn undertook mold remediation efforts but failed, and Concierge informed its residents on February 5, 2002, that, due to the mold, they would no longer be able to live in the facility.

Concierge filed a lawsuit, styled *Concierge Care Nursing Centers, Inc. v. Adams Insurance Services, Inc.*, Cause No. 2002-15652, in the 151st District Court of Harris County, Texas. The lawsuit names multiple defendants, including Nevco. Concierge's latest amended petition alleges that the actions of Nevco and others "combined to injure [Concierge] by permitting significant quantities of water to intrude into the [facility]. This water intrusion inevitably led to the growth of mold throughout the [facility] and rendered the [facility] unfit for its intended purpose as a nursing home."[2] Concierge's petition alleges that Nevco performed its waterproofing and joint sealing services in a negligent manner, and

---

[1]    Plaintiffs' Seventh Amended Original Petition, Cause No. 2002-15652, *Concierge Care Nursing Centers, Inc. v. Adams Ins. Serv., Inc.*, In the 151st District Court of Harris County, Texas, at 11.

[2]    *Id*. at 18.

that Nevco breached its implied warranty by failing to perform its services in a good and workmanlike manner.

Nevco tendered Concierge's mold damage claim to Nautilus and Evanston. Evanston denied the claim. Nautilus has defended Nevco against Concierge's suit, but filed this declaratory judgment action against Nevco, seeking a judgment that it has no duty to defend or indemnify. Nevco filed a third-party claim against Evanston, seeking a determination of what obligations, if any, Evanston owes to Nevco under the Policy. Nautilus in this motion seeks summary judgment that, under the "eight corners rule," it has no duty to defend or indemnify Nevco.

## II.   <u>SUMMARY JUDGMENT STANDARDS</u>

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Calbillo v. Cavender Oldsmobile, Inc.*, 288

F.3d 721, 725 (5th Cir. 2002).  An issue is material if its resolution could affect the outcome of the action.  *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  In deciding whether a fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.  *Hotard v. State Farm Fire & Cas. Co.,* 286 F.3d 814, 817 (5th Cir. 2002). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy – that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial.  *Smith  v. Brenoettsy,* 158 F.3d 908, 911 (5th Cir. 1998).  The movant meets this initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial."  *Id.*  If the movant meets this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1998)). A dispute over a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.* (quoting *Smith v. Brenoettsky*, 158 F.3d 908, 911 (5th Cir. 1998)); *see also Quorum Health Resources, L.L.C. v. Maverick County Hosp. District*, 308 F.3d 451, 458 (5th Cir. 2002).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that "unsworn pleadings do not constitute proper summary judgment evidence," quoting *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994)). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Id.* Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## III.   THE DUTY TO DEFEND AND INDEMNIFY

### A.   The Duty to Defend

A liability insurance policy consists, generally, of three parts: (1) the insuring agreement, which is the affirmative grant of coverage that sets forth who and what are covered; (2) the exclusions, which limit the insuring agreement's coverage; and (3) the conditions, which set forth a procedural framework for how the parties will conduct their dealings in the event of a loss.

Under Texas law, an insurer is required to defend its insured in any case in which at

least some of the allegations in the pleadings potentially state a claim covered by the policy. *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993).  The insured bears the burden of showing that the claim against it is potentially within the policy's affirmative grant of coverage.  *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996).  If the insurer relies on the policy's exclusions to deny coverage, the burden shifts to the insurer to prove the exclusion applies. TEX. INS. CODE ANN. art. 21.58(b) (Vernon Supp. 2004-2005); *New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195, 1199 (5th Cir. 1993).  If the insurer is successful, the burden shifts back to the insured to show that an exception to the exclusion brings the claim potentially within the scope of coverage under the insurance policy.  If there is "doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in [the] insured's favor."  *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

"The duty to defend is broader than the duty to indemnify under Texas law," which the parties agree applies in this case.  *See id.* (citing *American States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998)).  "An insurer's duty to defend is determined solely by the allegations in the pleadings and the language of the insurance policy.  This is the 'eight corners' or 'complaint allegation rule.'  If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured."  *Id.* (quoting *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)).  Put another way,

under the "eight corners rule," the duty to defend arises if the complaint, taken as true and construed broadly, asserts a claim within the policy terms. *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Merchants Fast Motor Lines,* 939 S.W.2d at 141.

In determining whether an insurer has a duty to defend its insured, Texas courts look to the allegations in the underlying lawsuit and the terms of the insurance contract. *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001) (citing *Employers Cas. Co. v Block*, 744 S.W.2d 940, 945 (Tex. 1988)).[3] "The duty to defend is determined by consulting the latest amended pleading." *Northfield Ins. Co. v. Loving Home Care*, 363 F.3d 523, 528 (5th Cir. 2004) (citing *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996)). "The focus of the inquiry is on the alleged facts, not on the asserted legal theories." *Id.* (citing *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Tex.*, 249 F.3d 389, 392 (5th Cir. 2001)). Determination of the duty to defend is based on an examination of the petition in the underlying action, without regard to the truth or falsity of the allegations asserted therein. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex. 1965). More specifically, "the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged." *Merchants Fast Motor Lines,* 939 S.W.2d at 141; *accord Bailey*, 133 F.3d

---

[3]     The duty is not affected by facts ascertained before suit or developed in the process of litigation, or by the outcome of the suit. *Taylor v. Travelers Ins. Co.*, 40 F.3d 79, 81 (5th Cir. 1994).

at 369. "If the petition only alleges facts excluded by the policy, . . . the insurer is not required to defend." *Loving Home Care*, 363 F.3d at 528 (citing *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982)). If the complaint in the underlying action alleges multiple claims or claims in the alternative, some of which are covered under the policy and some of which are not, the duty to defend arises if at least one of the claims in the complaint is facially within the policy's coverage. *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir. 1983). "Courts must resolve all doubts regarding the duty to defend in favor of the duty." *King*, 85 S.W.3d at 187; *accord Loving Home Care*, 363 F.3d at 528 ("[I]n case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in [the] insured's favor." (quoting *Merchants Fast Motor Lines*, 939 S.W.2d at 141)).

**B.    The Duty to Indemnify**

The duty to provide indemnity is separate and distinct from the duty to defend. *American Alliance Ins. Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 153 (Tex. App.--Dallas 1990, writ dismissed). "The duty to indemnify is based, not upon the pleadings, but upon the actual facts which underlie and result in the liability." *Id.* Thus, the duty to indemnify is narrower than the duty to defend. *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 393 (5th Cir. 1995).

**IV.    ANALYSIS**

Nautilus asserts that it has no duty to defend Nevco under the policy it issued for the

period covering June 16, 2000 to June 16, 2001.  Under the "eight corners" rule, an insurer is not legally required to defend a suit against its insured if the underlying petition does not allege facts within the scope of coverage.[4]  In the motion before the Court, Nautilus argues that Concierge's underlying petition fails to allege that the injury occurred within the policy period.  Nautilus contends that under Texas law, the occurrence that triggers liability under an insurance policy is the "manifestation" of the injury, and maintains that Concierge's petition alleges the injury manifested on July 5, 2001, after the policy period ended.  In response, Nevco and Concierge argue that the petition does not state when the mold damage manifested.  Concierge's petition states:

> 50.    **Around July 5, 2001,** Houston Concierge Care **identified** the presence of mold behind wall coverings and other areas at the Concierge and promptly informed Brae Burn and Morris in order to institute remediation efforts.

---

[4]    Nevco and Concierge suggest that the Court should review evidence indicating that the mold issue arose in April/May 2001.  The Fifth Circuit has held that the "eight corners rule" does not prohibit reference to extrinsic evidence when the petition "does not contain sufficient facts to enable the court to determine if coverage exists." *Primrose Operating Co. v. Nat'l American Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004) (quoting *Western Heritage Ins. Co. v. River Entertainment*, 998 F.2d 311, 313 (5th Cir. 1993)).  This limited "exception" to the "eight corners rule" applies ***only*** where the petition is ***wholly insufficient*** to allow the court to apply the "eight corners rule," and does not apply to recharacterize the legal theories asserted or to prove the truth of falsity of the factual allegations in the petition.  *Compare Primrose,* 382 F.3d at 553, *with Northfield*, 363 F.3d at 529-30 (recognizing that the Texas Supreme Court applies a strict eight corners test and holding that the duty to defend must be determined from the factual allegations of the operative pleading, even where the record contains conflicting extrinsic evidence); *see also Western Heritage*, 998 F.2d at 315 (approving the district court's reference to extrinsic evidence where it was impossible to discern from the complaint why the defendant in the underlying suit was impaired, and thus impossible to determine whether coverage was excluded based on a liquor liability exclusion in the general liability policy at issue).  The Court concludes that the petition is not insufficient to allow application of the eight corners rule.  The Court therefore does not consider Nevco's extrinsic evidence.

Eventually, Houston Concierge Care identified numerous areas within The Concierge where mold appeared.[5]

Although the Texas Supreme Court has not ruled on the issue of what rule applies to trigger insurance coverage in this circumstance, numerous intermediate appellate courts have stated that the "manifestation rule" applies in Texas.  *See Dorchester Dev. Corp. v. Safeco Ins. Co.,* 737 S.W.2d 380, 383 (Tex. App.–Dallas 1987, no writ) (adopting manifestation rule); *see also American Home Assurance Co. v. Unitramp Ltd.,* 146 F.3d 311, 313 (5th Cir. 1998) (applying manifestation rule); *State Farm Mut. Auto. Ins. Co. v. Kelly,* 945 S.W.2d 905, 910 (Tex. App.–Austin 1997, no writ) (same); *Cullen/Frost Bank v. Commonwealth Lloyd's Ins. Co.,* 852 S.W.2d 252, 257 (Tex. App.–Dallas 1993, writ denied) (same); *Aetna Cas. & Sur. Co. v. Naran,* 1999 WL 59782, at *4 (Tex. App.–Dallas 1999, pet. denied) (not designated for publication) (same); *Coastal Ref. & Mktg., Inc. v. Coastal Offshore Ins., Ltd.,* 1996 WL 87205, at *2 (Tex. App.–Houston [14th Dist.] 1996, no pet.) (not designated for publication) (same).

Nevco and Concierge do not seriously contest the proposition that the manifestation rule applies, but instead essentially debate the meaning of the word "manifest."  The manifestation rule has been defined as: "coverage is not afforded unless an *identifiable* damage or injury, other than merely causative negligence, takes place during the policy period."  *Cullen/Frost Bank,* 852 S.W.2d at 257 (emphasis added) (also stating that "[t]he

---

[5]      Plaintiffs' Seventh Amended Original Petition, Cause No. 2002-15652*, Concierge Care Nursing Centers, Inc. v. Adams Ins. Serv., Inc*., In the 151st District Court of Harris County, Texas,  at 11.

time of the occurrence is when the complaining party actually was damaged, not the time that the wrongful act was committed"); *see also Unitramp*, 146 F.3d at 313 (same).[6]  The dictionary definition of "manifestation" is "outward or perceptible indication."  THE RANDOM HOUSE WEBSTER'S DICTIONARY 402 (1993).  "Manifest" is defined as "readily perceived; evident." *Id.*  Under this approach, "manifested" or "identifiable" mean "capable of easy perception." *See Unitramp,* 146 F.3d at 314.

Concierge's petition does not state at what point the mold became capable of easy perception.  The petition merely states that mold was "identified" "[a]round July 5, 2001." "Identified" means "to verify the identity of."   THE RANDOM HOUSE WEBSTER'S DICTIONARY 327 (1993).  Thus, the petition alleges that Concierge figured that it had a mold problem on or about July 5, 2001.  There is no allegation in the petition about when the mold became severe enough that it was possible for the tenants, owners or manager to perceive it was present.  The mold easily could have been "identifiable" a few weeks prior to that point. In construing the allegations of the underlying suit, the pleadings must be strictly construed against the insurer, and any doubt is resolved in favor of coverage or a duty to defend.  *See Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines,* 939 S.W.2d 139, 141 (Tex. 1997); *Gehan Homes, Ltd. v. Employers Mut. Cas. Co.,* 146 S.W.3d 833, 845-46 (Tex. App.–Dallas 2004, pet. filed) (holding that petition's claim of "past" injuries caused by home's faulty foundation was an allegation of a potential occurrence within coverage periods of two

---

[6]     The cases often use the term "damage" and "injury" interchangeably.  For the purposes of this opinion, the Court draws no distinction between the two.

consecutive policies, even though petition failed to identify when injuries occurred).  Thus, Nautilus has a duty to defend under its policy.

Nautilus pursues two lines of argument.  It first insists that Concierge's petition alleges merely that the negligent work was performed during the Policy period and, under the manifestation rule, liability is not triggered by the act or omission that caused the damage.  It is true that this allegation does not trigger a duty to defend, but this proposition does not resolve the issue of whether Concierge has otherwise alleged an occurrence within the policy period.  The Court must determine whether an identifiable damage or injury, other than merely causative negligence, is alleged to have taken place during the policy period. In arguing that there was no such event, Nautilus next contends that the manifestation rule requires that the damage be *discovered* during the policy period.  There is some support for this argument in the language of some of the cases Nautilus cites.  *See Dorchester,* 737 S.W.2d at 383 ("[N]o liability exists on the part of the insurer unless the property damage manifests itself, or becomes apparent, during the policy period."); *Coastal Ref. & Mktg.,* 1996 WL 87205, at *2 (same); *Naran,* 1999 WL 59782, at *4 ("Liability arises under a policy only if property damage manifests itself or becomes apparent during the policy period.").  However, the Fifth Circuit has cautioned that, for purposes of the manifestation rule, "it is important to understand that 'apparent' does not mean 'discovered'; just because something is unknown to an individual does not render it, in an objective sense, unapparent." *Unitramp,* 146 F.3d at 314.  Although Concierge may not have actually identified the mold by June 16, 2001, the petition must be construed liberally, and accordingly, is deemed to

allege an "*identifiable*" occurrence within the coverage period.

The analytical difficulty presented by the instant case is the time lag between when the hidden damage became apparent (able to be discovered or identified), and when it was actually discovered.  In most of the cases cited by Nautilus, there is no such delay between the occurrence or the accident and its identification.  *See Dorchester*, 737 S.W.2d at 383 (because insured failed to answer request for admission, property damages did not manifest during policy period); *Kelly,* 945 S.W.2d at 910 ("occurrence" manifested under auto policy when automobile with defective title was confiscated); *Naran*, 1999 WL 59782, at *5 (finding that property damage "occurrence" under policy was fire, and not conducive conditions leading up to it).  Nautilus relies on *Coastal Refining and Marketing v. Coastal Offshore Ins., Ltd.*, which held that, in order to recover under an insurance policy, the insured was required to show at trial that the injuries at issue—cracks in nozzles on a petroleum reactor at a refinery—"themselves occurred during the policy period."  *Coastal Ref. & Mktg.*, 1996 WL 87205, at *2 (Tex. App.–Houston [14th Dist.] 1996, no pet.) (not designated for publication).  Aside from the fact the cited case is unreported and therefore is not to be cited as precedent, the case is not persuasive authority.  Although discovery of the actual injury during the policy period would be helpful in establishing an occurrence of the injury for policy interpretation purposes, the court did not hold that discovery of injury was necessary to trigger coverage.  *See id.* at *3.  Furthermore, at least one Texas court has held that injuries and resulting damages can manifest over time.  *See Cullen/Frost,* 852 S.W.2d at 257.

Nautilus also relies on *Allstate Ins. Co. v. Hicks*, 134 S.W.3d 304 (Tex. App.–Amarillo 2003, no pet.), a case in which homeowners brought suit against the prior owner to recover damages for mold found in their house more than three years after the purchase.  The prior owner sought defense from its insurer Allstate, who provided coverage from the day before the sale closed until about three months later.  *Id.* at 310.  In finding no duty to defend, the court noted that the homeowners "learned of the mold contamination . . . and lost use of the house . . . some three years after the end of [the prior owner's] policy period."  *Id.* at 312.  Because the underlying petition "[did] not claim a loss of use during the policy period," or injury during the policy period, the court held there was no occurrence within that period.  *Id.*  Contrary to Nautilus's assertion, *Hicks* does not hold that there could be no coverage where mold was discovered after the expiration of the policy.  Rather, the underlying petition in *Hicks* could not fairly be read to allege that the injury occurred—that is, that mold formed—during the policy period which ended three years earlier.  In the instant case, the policy period ended merely a matter of weeks before the mold was discovered.  It takes no semantic or logical gymnastics to imagine that the mold damage existed and was identifiable within the facility's walls during the policy period in this case.

## V.    CONCLUSION AND ORDER

Nautilus has not established it does not have a duty to defend or indemnify Nevco in the lawsuit by Concierge against Nevco, and summary judgment in Nautilus's favor is inappropriate.  Indeed, a liberal construction of the operative pleading establishes Nautilus has a duty to defend Nevco against Concierge's claim.  It is therefore

**ORDERED** that Plaintiff Nautilus's Motion for Summary Judgement [Doc. # 24] is

**DENIED.**

**SIGNED** at Houston, Texas, this **19th** day of **April, 2005.**

Nancy F. Atlas
United States District Judge