## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| NAUTILUS INSURANCE CO., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-2986 |
| | § | |
| NEVCO WATERPROOFING, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court in this insurance coverage dispute is a Motion for Summary Judgment [Doc. # 24] ("Plaintiff's Motion") filed by Plaintiff Nautilus Insurance Co. ("Nautilus"). Defendant Nevco Waterproofing, Inc. ("Nevco") and Counter-Defendants Concierge Care Nursing Centers, Inc. and Houston Concierge Care, L.P. (collectively, "Concierge") have responded and the motion is ripe for decision.[1] Having considered the parties' submissions, all matters of record, and the applicable legal authorities, the Court concludes that Nautilus' motion should be **denied** and that Nautilus has a duty to defend Nevco in the state court litigation filed by Concierge against Nevco and others.

---

[1] Nevco and Concierge filed a Joint Response [Doc. # 30], Nautilus replied [Doc. # 31], and the Court denied the motion by Memorandum and Order dated April 19, 2005. On May 2, 2005, Nautilus filed the pending Motion to Reconsider [Doc. # 41] ("Reconsideration Motion"), to which Nevco responded on June 30, 2005 [Doc. # 44]. By Order dated July 11, 2005, the Court vacated the April 19 Memorandum and issues this ruling in its stead.

## I.    BACKGROUND

Nevco was the beneficiary of a liability insurance policy (the "policy") issued by Nautilus covering the period June 16, 2000 to June 16, 2001.  During this time, Nevco performed waterproofing and joint sealing on behalf of Brae Burn Construction Co. ("Brae Burn"), a general contractor, in the construction of a nursing home and health care facility in Houston, Texas.  Concierge owned the nursing home facility that Brae Burn, together with various subcontractors, built.  Brae Burn, Nevco, and others completed construction in September, 2000, and residents began to move into the facility in October 2000.  At the end of the Nautilus policy period, June 16, 2001, an insurance policy from Evanston Insurance Co. commenced.

Concierge identified mold behind wall coverings and other areas in the nursing home facility "[a]round July 5, 2001."[2]  Brae Burn undertook mold remediation efforts, which failed.  Concierge informed its residents on February 5, 2002, that, due to the mold, they would no longer be able to live in the facility.

Concierge filed a lawsuit, styled *Concierge Care Nursing Centers, Inc. v. Adams Insurance Services, Inc*., Cause No. 2002-15652*,* in the 151st District Court of Harris County, Texas.  The lawsuit names multiple defendants, including Nevco.  Concierge's latest amended petition alleges that the actions of Nevco and others "combined to injure [Concierge] by permitting significant quantities of water to intrude into the [facility].  This water intrusion inevitably led to the growth of mold throughout the [facility] and rendered the [facility] unfit for its intended purpose as

---

[2]    Plaintiffs' Seventh Amended Original Petition (the "Petition"), Cause No. 2002-15652*, Concierge Care Nursing Centers, Inc. v. Adams Ins. Serv., Inc*., In the 151st District Court of Harris County, Texas, at 11.

a nursing home."[3]   Concierge's petition alleges that Nevco performed its waterproofing and joint sealing services in a negligent manner, and that Nevco breached its implied warranty by failing to perform its services in a good and workmanlike manner.[4]

Nevco tendered Concierge's mold damage claim to Nautilus and Evanston. Evanston denied the claim.[5]   Nautilus has defended Nevco against Concierge's suit, but filed this declaratory judgment action against Nevco, seeking a judgment that it has no duty to defend or indemnify.   Nevco filed a third-party claim against Evanston, seeking a determination of what obligations, if any, Evanston owes to Nevco under the Evanston policy.   Nautilus in this motion seeks summary judgment that, under the "eight corners rule," it has no duty to defend or indemnify Nevco.

## II.    **SUMMARY JUDGMENT STANDARDS**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.   *Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[3]    *Id*. at 18.

[4]    *Id.* at 13-17.

[5]    By Memorandum and Order dated April 19, 2005, this Court granted summary judgment in favor of Evanston holding that Evanston had no duty to defend or indemnify Nevco because the policy's "Contractor Limitation Endorsement" excluded coverage.

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002). An issue is material if its resolution could affect the outcome of the action. *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding whether a fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Hotard v. State Farm Fire & Cas. Co.*, 286 F.3d 814, 817 (5th Cir. 2002). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy – that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). The movant meets this initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Id.* If the movant meets this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1998)). A dispute over a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* (quoting *Smith v. Brenoettsky*, 158 F.3d 908, 911 (5th Cir. 1998)); *see also Quorum Health Resources, L.L.C. v. Maverick County*

*Hosp. District*, 308 F.3d 451, 458 (5th Cir. 2002).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that "unsworn pleadings do not constitute proper summary judgment evidence," quoting *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994)). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Id.* Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## III.   LEGAL STANDARDS ON DUTIES TO DEFEND AND INDEMNIFY

Under Texas law, an insurer is required to defend its insured in any case in which at least some of the allegations in the pleadings potentially state a claim covered by the policy. *Lincoln Gen'l Ins. Co. v. Reyna*, 401 F.3d 347, 350 (5th Cir. 2005); *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993). "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997); *see Fidelity & Guaranty Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 789 (Tex. 1982). The insured bears the burden of showing that the claim against it

is potentially within the policy's affirmative grant of coverage. *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996).[6]

If the insurer relies on the policy's exclusions to deny coverage, the burden shifts to the insurer to prove the exclusion applies. TEX. INS. CODE ANN. art. 21.58(b) (Vernon Supp. 2004-2005); *New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195, 1199 (5th Cir. 1993). If the insurer is successful, the burden shifts back to the insured to show that an exception to the exclusion brings the claim potentially within the scope of coverage under the insurance policy.

"An insurer's duty to defend is determined solely by the allegations in the pleadings and the language of the insurance policy. This is the 'eight corners' or 'complaint allegation rule.' If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *Northfield Ins. Co. v. Loving Home Care*, 363 F.3d 523, 528 (5th Cir. 2004) (quoting *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)). Put another way, under the "eight corners rule," the duty to defend arises if the complaint, taken as true and construed broadly, asserts a claim within the policy terms. *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Merchants Fast Motor Lines,* 939 S.W.2d at 141; *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001) (citing *Employers Cas. Co. v Block*, 744 S.W.2d 940, 945 (Tex. 1988)).[7] "The duty to defend is determined by consulting the latest

---

[6]     A liability insurance policy consists, generally, of three parts: (1) the insuring agreement, which is the affirmative grant of coverage that sets forth who and what are covered; (2) the exclusions, which limit the insuring agreement's coverage; and (3) the conditions, which set forth a procedural framework for how the parties will conduct their dealings in the event of a loss.

[7]     The duty is not affected by facts ascertained before suit or developed in the process of
(continued...)

amended pleading." *Loving Home Care*, 363 F.3d at 528 (citing *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996)). "The focus of the inquiry is on the alleged facts, not on the asserted legal theories." *Id.* (citing *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Tex.*, 249 F.3d 389, 392 (5th Cir. 2001)). Determination of the duty to defend is based on an examination of the petition in the underlying action, without regard to the truth or falsity of the allegations asserted therein. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex. 1965). More specifically, "the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged." *Merchants Fast Motor Lines,* 939 S.W.2d at 141; *accord American States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998).

"Where a complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially a case under the complaint within the coverage of the policy." *Merchants Fast Motor Lines*, 939 S.W.2d at 141 (citing *Heyden*, 387 S.W.2d at 26 (citing 50 A.L.R.2d 458, 504)). If there is "doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in [the] insured's favor." *Id.*; *accord King*, 85 S.W.3d at 187 ("Courts must resolve all doubts regarding the duty to defend in favor of the duty."); *Loving Home Care*, 363 F.3d at 528; *Heyden*, 387 S.W.2d at 26. "If the petition only alleges facts excluded by the policy, . . . the insurer is not required to

---

[7]      (...continued)
litigation, or by the outcome of the suit. *Taylor v. Travelers Ins. Co.*, 40 F.3d 79, 81 (5th Cir. 1994).

defend." *Loving Home Care*, 363 F.3d at 528; *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982)).

If the complaint in the underlying action alleges multiple claims or claims in the alternative, some of which are covered under the policy and some of which are not, the duty to defend arises if at least one of the claims in the complaint is facially within the policy's coverage. *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir. 1983).

The duty to provide indemnity is separate and distinct from the duty to defend. *American Alliance Ins. Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 153 (Tex. App.-- Dallas 1990, writ dismissed). "The duty to defend is broader than the duty to indemnify under Texas law," which the parties agree applies in this case. *See id.* (citing *American States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998)). "The duty to indemnify is based, not upon the pleadings, but upon the actual facts which underlie and result in the liability." *Id.* Thus, the duty to indemnify is narrower than the duty to defend. *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 393 (5th Cir. 1995). Where there is a duty to defend, the issue of whether there is a duty to indemnify becomes nonjusticiable. *Loving Home Care*, 363 F.3d at 536.

## IV.   **DISCUSSION**

Nautilus asserts that it has no duty to defend Nevco under the policy it issued for the period covering June 16, 2000 to June 16, 2001. Nautilus maintains that Nevco has failed to establish a duty to defend because Concierge's Petition alleges that the injury was discovered on July 5, 2001, after Nautilus' policy period ended.[8] Nautilus also argues that, even if the triggering event is the physical manifestation,

---

[8]     Nautilus' Summary Judgment Motion, at 7.

rather than discovery, of the mold, Nevco cannot meet its burden of proof to establish a duty to defend because Concierge's Petition fails to specifically allege that such a manifestation occurred within the policy period.[9]  These arguments are inconsistent with applicable law.

### A.    Pertinent Allegations in the Petition

Concierge has sued 27 different Defendants.  The Petition, while 21 pages long, contains only sparse allegations of fact about the events specifically regarding the mold or about Nevco.  Concierge alleges simply that the general contractor, Brae Burn, hired Nevco "to perform waterproofing and joint sealing."[10]   Nautilus points to the following allegations in Concierge's Petition:

> 49.   Potential residents came to the Concierge and**, being very impressed by the facility** and the level of care being provided at the Concierge, made arrangements to move to the Concierge. From October, 2000, ***through July, 2001, more and more residents made The Concierge their home***, and Houston Concierge Care's ***business was proceeding as planned in a very profitable way***.  All this was to change soon.

> 50.   Around July 5, 2001, Houston Concierge Care ***identified the presence of mold behind wall coverings and other areas at the Concierge*** and promptly informed Brae Burn and Morris in order to institute remediation efforts.  Eventually, Houston Concierge Care identified numerous areas within The Concierge where mold appeared.

> \*    \*    \*    \*

---

[9]    Nautilus' Reconsideration Motion, at 3.

[10]    Petition, at 8, ¶ 43.  Related services were obtained from other defendant companies, such as "caulking" from Tremco Incorporated.  *Id.* at 8, ¶ 45.

> 53. The defendants' wrongful acts caused [Concierge] to suffer significant damages, including by way of example and not limitation, ***damage to the physical structure of The Concierge caused by water intrusion and mold***, expenses incurred in investigation and remediation efforts, and business losses caused by the defects in construction of the facility and the need to close large portions of the facility to permit remediation and repair, and then, ultimately, to close the entire facility.[11]

Thus, Concierge makes allegations only about when it identified it had a mold problem.

## B.   **Triggering Event**

Although the Texas Supreme Court has not ruled on the issue of what rule applies to trigger insurance property damage coverage in this circumstance, numerous intermediate appellate courts have stated that the "manifestation rule" applies in Texas. *See Dorchester Dev. Corp. v. Safeco Ins. Co.,* 737 S.W.2d 380, 383 (Tex. App.–Dallas 1987, no writ) (adopting manifestation rule); *see also American Home Assurance Co. v. Unitramp Ltd.,* 146 F.3d 311, 313 (5th Cir. 1998) (applying manifestation rule); *State Farm Mut. Auto. Ins. Co. v. Kelly,* 945 S.W.2d 905, 910

---

[11]     *Id.* at 11-12.  Concierge further alleged:

> 51.   In the fall of 2001, Brae Burn, acting in concert with [others], represented to Plaintiffs that Brae Burn would fix the problems at The Concierge.  Relying on the representations, the Concierge moved residents from the south side of The Concierge to the north side of The Concierge. . . .

> 52.   On Tuesday, February 5, 2002, The Concierge residents were told that, because of the presence of mold at The Concierge . . . residents would no longer be able to live at The Concierge. . . . The Concierge's doors closed.

*Id.*

(Tex. App.–Austin 1997, no writ) (same); *Cullen/Frost Bank v. Commonwealth Lloyd's Ins. Co.,* 852 S.W.2d 252, 257 (Tex. App.–Dallas 1993, writ denied) (same); *Aetna Cas. & Sur. Co. v. Naran,* 1999 WL 59782, at *4 (Tex. App.–Dallas 1999, pet. denied) (not designated for publication) (same); *Coastal Ref. & Mktg., Inc. v. Coastal Offshore Ins., Ltd.,* 1996 WL 87205, at *2 (Tex. App.–Houston [14th Dist.] 1996, no pet.) (not designated for publication) (same).  Nautilus does not contest this rule.[12] Absent any contest in this case, the Court adopts the rule that in Texas the "occurrence" that triggers liability under an insurance policy for property damage from mold is the "manifestation" of the injury.

Nevco and Concierge do not seriously contest the proposition that the manifestation rule applies, but instead essentially debate the meaning of the word "manifest."  The manifestation rule has been defined as: "coverage is not afforded unless an *identifiable* damage or injury, other than merely causative negligence, takes place during the policy period."  *Cullen/Frost Bank,* 852 S.W.2d at 257 (emphasis added) (also stating that "[t]he time of the occurrence is when the complaining party actually was damaged, not the time that the wrongful act was committed"); *see also Unitramp*, 146 F.3d at 313 (same).[13]  The dictionary definition of "manifestation" is "outward or perceptible indication."  THE RANDOM HOUSE WEBSTER'S DICTIONARY 402 (1993).  "Manifest" means "readily perceived; evident."  *Id*.  Under this approach, the words "manifested" or "identifiable" mean "capable of easy perception."  *See Unitramp,* 146 F.3d at 314.

## C.   Analysis

*Liberal Construction of the Petition.*– Nautilus urges that under Texas law,

---

[12]    Nautilus' Summary Judgment Motion, at 4-5; *see* Reconsideration Motion, at 3-4.

[13]    The cases often use the term "damage" and "injury" interchangeably.  For the purposes of this opinion, the Court draws no distinction between the two.

"the insured has the burden of showing that the claimed damages occurred during the policy period," citing *Great Am. Ins. Co. v. Calli Homes, Inc.*, 236 F. Supp. 2d 693,702 (S.D.Tex. 2002) (Rosenthal, J.) (citing *Employers Cas.Co. v. Block*, 744 S.W.2d 940, 945 (Tex. 1988), *overruled on other grounds by State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996)).[14]  The Fifth Circuit has recently clarified that this means that "[i]t is the insured's burden to establish that a claim is ***potentially*** within the scope of coverage."  *Lincoln General Ins. Co. v. Reyna,* 401 F.3d 347, 350 (5th Cir. 2005).  In other words, a duty to defend does not exist "if the only facts alleged are excluded from the policy's coverage."  *Id.*; *see also Loving Home Care*, 363 F.3d at 528; *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982)).  However, once the insured has established that a claim is potentially within the scope of coverage, the burden shifts to the insurer to show "that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of all claims . . . within the confines of the eight corners rule."  *Reyna,* 401 F.3d at 350 (citing *Loving Home Care,* 363 F.3d at 528).  In construing the allegations of the underlying suit, the pleadings must be strictly construed against the insurer, and any "doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action" is "resolved in the insured's favor."  *Merchants Fast Motor Lines,* 939 S.W.2d at 141; *see also Gehan Homes, Ltd. v. Employers Mut. Cas. Co.,* 146 S.W.3d 833, 845-46 (Tex. App.–Dallas 2004, pet. filed) (holding that petition's claim of "past" injuries caused by home's faulty foundation was an allegation of a potential occurrence within coverage periods of two consecutive policies, even though petition failed to identify when injuries occurred).

---

[14]      Reconsideration Motion, at 2.

Nautilus first insists that Concierge's Petition alleges merely that the negligent work was performed during the policy period and, under the manifestation rule, liability is not triggered by the act or omission that caused the damage.  It is true that this allegation of negligent work during the policy period does not trigger a duty to defend.  However, this proposition does not resolve the issue of whether Concierge has otherwise alleged facts which constitute an "occurrence" within the policy period. The Court must determine whether Concierge has alleged that an identifiable damage or injury, not merely causative negligence, existed during the policy period.

Nautilus also argues in this connection that there was no such event, contending instead that the manifestation rule requires that the damage be *discovered* during the policy period.  This proposition is not entirely without support in the language of some of the cases Nautilus cites.  *See Dorchester,* 737 S.W.2d at 383 ("[N]o liability exists on the part of the insurer unless the property damage manifests itself, or becomes apparent, during the policy period."); *Coastal Ref. & Mktg.,* 1996 WL 87205, at *2 (same); *Naran,* 1999 WL 59782, at *4 ("Liability arises under a policy only if property damage manifests itself or becomes apparent during the policy period.").  However, the fact that Texas courts have allowed the option of finding coverage when the property damage becomes "apparent," does not mean that this circumstance is the only way to trigger coverage.  These authorities state that there is the alternative trigger — when the property damage "manifests itself."  Even more significantly, the Fifth Circuit has cautioned that, for purposes of the manifestation rule, "it is important to understand that 'apparent' does not mean 'discovered'; just because something is unknown to an individual does not render it, in an objective sense, unapparent."  *Unitramp*, 146 F.3d at 314.  Nautilus' argument that the mold

must be alleged to have been "discovered" during the policy period is rejected.[15]

Nautilus last argument is that Concierge has failed to make any allegations about when the mold "manifested," or that the mold was "capable of easy perception," "identifiable," or "apparent"[16] prior to July 5, 2001, the only date mentioned in the Petition.  Nautilus contends that because "the [P]etition is silent as to the date of the 'triggering event,' such as when the property damage 'manifested,'" the insured Nevco "cannot meet its burden of proof" and therefore Nevco "loses."[17] This contention fails to apply prevailing standards for the duty to defend analysis.

It is true that Concierge's Petition does not state when the mold manifested itself.  There are no allegations, one way or another, about the point in time when the mold became "capable of easy perception" or "identifiable."  *See Unitramp,* 146 F.3d at 313-14.  The Petition merely states that "[a]round July 5, 2001, Houston Concierge Care identified the presence of mold behind wall coverings and other areas . . . ."[18] "Identified" means "to verify the identity of."  THE RANDOM HOUSE WEBSTER'S DICTIONARY 327 (1993).  There is no allegation in the Petition about when the mold

---

[15]    Nautilus also argues that, under Fifth Circuit precedent, the not-yet-identified mold at the Concierge facilities was "identifiable" only if it was so obvious that it would have been discovered but for the "sheer indolence" of the insured.  *See* Reconsideration Motion, at 8. In making this assertion, Nautilus relies on an example, given in *dicta,* in *American Home Assurance Co. v. Unitramp Ltd.,* 146 F.3d 311, 313 (5th Cir. 1998).  The *Unitramp* court stated that "[i]f the Plaintiffs [in another case] had purchased a home that was missing a roof – but through sheer indolence failed to discover the defect for a year – [the Court] would not say that the defect became 'apparent' on that later date." *Id.*  Nautilus construes this reference as a "sheer indolence test" for determining when hidden damage becomes identifiable.  The Court is not persuaded this statement creates a new test for an occurrence or manifestation.

[16]    *See Unitramp*, 146 F.3d at 313-14 (citing WEBSTER'S THIRD NEW INT'L DICTIONARY 102 (1986)).

[17]    Reconsideration Motion, at 3.

[18]    Petition, at 11, ¶ 50.

became severe enough that it was possible for the tenants, owners, staff or managers to perceive it was present.  Nautilus deduces from this omission that insured Nevco "loses."[19]   However, longstanding Texas authorities, as interpreted by the Fifth Circuit, mandate the conclusion that this omission is not fatal to Nautilus' duty to defend under the policy that expired on June 16, 2001.

The "eight corners rule" forbids the Court from reading facts into the pleading, looking outside the complaint, or "imagin[ing] fact patterns that might trigger coverage."  *Guaranty Nat'l Ins. Co. v. Azrock Indus., Inc.*, 211 F.3d 239, 251 (5th Cir. 2000); *see also Merchants Fast Motor Lines*, 939 S.W.2d at 142 (holding that the court will not consider facts outside the pleadings or determine whether facts within the coverage could have been pled).  However, "if the allegations in the underlying pleadings ***could even potentially*** trigger coverage, and the allegations do not on their face conclusively activate an exclusion, then the insurer must defend its insured against the claim."  *Westport Ins. Corp. v. Atchley, Russell, Waldrop, & Hlavinka, L.L.P.,* 267 F. Supp. 2d 601, 612 (E.D. Tex. 2003); *see Reyna,* 401 F.3d at 350 ("It is the insured's burden to establish that a claim is ***potentially*** within the scope of coverage."); *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002) ("Courts must resolve all doubts regarding the duty to defend in favor of the duty."); *Landmark Chevrolet Corp. v. Universal Underwriters Ins. Co.*, 121 S.W.3d 886, 889-890 (Tex.App.– Houston [1st Dist.] 2003, pet filed) ("An insurer's duty to defend arises if the factual allegations in the pleadings against the insured, when fairly and reasonably construed, state a cause of action potentially covered by the policy."); *see also Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993); *Merchants Fast Motor Lines, Inc.*, 939 S.W.2d at 141;

---

[19]      Reconsideration Motion, at 3.

*McManus*, 633 S.W.2d at 789; *Heyden*, 387 S.W.2d at 26 (citing 50 A.L.R.2d 458, 504)); *Cullen/Frost,* 852 S.W.2d at 257.   The Petition in this case supports the reasonable inference that there was mold present and identifiable on or before June 16.  The Petition alleges that the mold was so severe that tenants had to be moved out of sections of the facility in the Fall of 2001, only several months after the mold originally was discovered on July 5.[20]  Moreover, the fact that the mold allegedly could not be remediated suggests that it was unusually extensive.  Resolving doubts in favor of the insured, the Petition states a claim potentially covered under the policy.

Moreover, nothing in Concierge's Petition negates the likelihood that the mold found on July 5, 2001 behind wallpaper and elsewhere at Concierge's facility was identifiable and capable of easy perception three weeks earlier on June 16, 2001. Indeed, the reasonable inference is that the mold had manifested prior to June 16. *See Reyna,* 401 F.3d at 350 ("Once the insured has established [that a claim is potentially within the scope of coverage], the burden shifts to the insurer to show 'that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage.").   The allegations in the Petition that the facility showed well to prospective tenants or other visitors, that "more and more residents" made the facility their home, and that "business was proceeding as planned in a very profitable way" through July[21] do not suggest that mold was not identifiable in the facility on or before June 16, three weeks before the mold condition was specifically identified. Elderly visitors and their families considering a health care facility and elderly people who have recently moved in have no reason to scrutinize all parts of the walls of the

---

[20]     Petition, at 11, ¶ 51.

[21]     *Id.* at 11, ¶ 49.

facility's residential and other areas.  Nor is there any reason to believe, nor any allegation, that such visitors visited the precise locations where the mold was discovered in July and thereafter.

Because there are no factual allegations that would exclude a duty to defend, and because the Petition's allegations must be construed in favor of the insured, the Court concludes that the Petition adequately alleges facts to support the reasonable inference that there was mold present and identifiable on or before June 16.  On the specific facts of this case, the Court concludes that the Petition potentially states a claim covered by the Nautilus policy and Nautilus has a duty to defend Nevco against the Concierge claims in state court.[22]

---

[22]   The case at bar is also materially distinguishable from *Allstate Ins. Co. v. Hicks*, 134 S.W.3d 304 (Tex. App.–Amarillo 2003, no pet.), and *Guaranty Nat'l Ins. Co. v. Azrock Indus. Inc.*, 211 F.3d 239 (5th Cir. 2000), cases on which Nautilus heavily relies.  In both *Hicks* and *Azrock*, it was not reasonable for the court to infer that the injury occurred during the policy period.

In *Azrock*, at least thirty-three former employees brought suit against Azrock, their employer, alleging personal injuries caused by exposure to asbestos.  *Azrock*, 211 F.3d at 241.  Azrock manufactured floor tiles containing asbestos fibers for approximately *fifty years*, from the 1930s to the early 1980s.  *Id.*  Guaranty National, who provided umbrella (excess) liability coverage to Azrock for the limited period of July 1, 1985 through June 30, 1986, sued for declaratory judgment that it had no duty to defend the company against all of the plaintiffs in the underlying suit.  *Id.* at 242.  *Azrock* is materially distinguishable from the case at bar because in that case, the court could not make a reasonable inference that each plaintiff's injuries manifested during the limited one-year period of the insurer's coverage, given the half-century of asbestos exposure.

Homeowners in *Hicks* brought suit against the home's prior owner to recover damages for mold found in their house more than three years after the purchase.  The prior owner sought defense from its insurer Allstate, who provided coverage from the day before the sale closed until about three months later.  *Hicks*, 134 S.W.3d at 310.  In finding no duty to defend, the court noted that the homeowners "learned of the mold contamination . . . and lost use of the house . . . some three years after the end of [the prior owner's] policy period."  *Id.* at 312.  Because the underlying petition "[did] not claim a loss of use during the policy period," or

(continued...)

***Extrinsic Evidence Analysis.*** – Because Concierge's Petition lacks an explicit allegation addressing when the mold on the property manifested, Nautilus' duty to defend is open to debate.  As an alternative to the preceding analysis in which this Court concludes that Concierge's Petition alleges sufficient facts warranting Nautilus' duty to defend, the Court undertakes a separate and independent evaluation of whether it is proper to consider extrinsic evidence shedding light on whether the mold was manifest or identifiable on or before June 16, 2001.  The Court concludes that this case is within a narrow group of cases the Fifth Circuit has predicted[23] the Texas Supreme Court might recognize granting an exception to the strict "eight corners rule."  *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 530-31 (5th Cir. Mar. 22, 2004).  Nevco offers extrinsic evidence consisting of deposition testimony of Stuart Webster, who was apparently involved in Concierge's remediation.  Mr. Webster testifies that he interviewed staff at the facility and learned that the mold issue arose in April or May 2001, which is at least one month before the end of the Nautilus policy period.  Mr. Webster reported that staff at the facility noticed subtle "bubbling" or some other odd conditions in the wallpaper in spots where mold was later identified.[24]  If this evidence is admissible, Nevco easily meets

---

[22]     (...continued)
injury during the policy period, or causation for most of the plaintiffs, the court held there was no occurrence within that period.  *Id.*  Contrary to Nautilus' assertion, *Hicks* does not hold that there could be no coverage where mold was discovered after the expiration of the policy.  Rather, contrary to the case at bar, the underlying petition in *Hicks* could not fairly be read to allege that the injury occurred — that is, that mold formed — during the policy period which ended three years earlier.

[23]     The Court of Appeals has made an *Erie* guess in this regard.  *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938).

[24]     Deposition of Stuart Webster, October 26, 2004, at 50-53, 62-65, attached to Affidavit of
(continued...)

its burden to demonstrate its entitlement to a defense from Nautilus against Concierge's claims.

The "eight corners rule" does not prohibit reference to extrinsic evidence when the petition "does not contain sufficient facts to enable the court to determine if coverage exists." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. Aug. 23, 2004) (quoting *Western Heritage Ins. Co. v. River Entm't*, 998 F.2d 311, 313 (5th Cir. 1993)); *Loving Home Care*, 363 F.3d at 530-31 (analyzing *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, 267 F. Supp. 2d 601, 611-22 (E.D. Tex. 2003) (concluding that Texas courts will consider extrinsic evidence in very limited circumstances to determine "fundamental coverage issues" involving facts which can readily be determined, but not to engage the truth or falsity of the allegations in the underlying petition)).  This "eight corners rule" exception applies only in very limited circumstances "where fundamental policy coverage questions can be resolved by readily determined facts that do not engage the truth or falsity of the allegations in the underlying petition." *Loving Home Care*, 363 F.3d at 530.  "Fundamental coverage issues include (1) whether the person sued has been specifically excluded by name or description from any coverage, (2) whether the property in suit is included in or has been expressly excluded from any coverage, and (3) whether the policy exists." *Id.* at 530-31.

The *Loving Home Care* court emphasized that this exception can be applied in only a rare case "where it is initially impossible to discern whether coverage is potentially implicated and when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits or engage the truth or falsity

---

[24]     (...continued)
James Boanerges,  which in turn is attached to the Joint Response of Nevco and Concierge [Doc. # 30] to Nautilus' Motion for Summary Judgment.

of any facts alleged in the underlying case." *Id.* at 531 (recognizing that the Texas Supreme Court applies a strict eight corners test and holding that the duty to defend must be determined from the factual allegations of the operative pleading, even where the record contains conflicting extrinsic evidence); *see Primrose,* 382 F.3d at 553 (allowing extrinsic evidence on two factual matters because the underlying petition did not address the points at all); *Western Heritage*, 998 F.2d at 315 (approving the district court's reference to extrinsic evidence where it was impossible to discern from the complaint why the defendant in the underlying suit was impaired, and thus impossible to determine whether coverage was excluded based on a liquor liability exclusion in the general liability policy at issue); *John Deere Ins. Co. v. Truckin' U.S.A.*, 122 F.3d 270, 272-73 (5th Cir. 1997) (considering extrinsic evidence to clarify whether the tractor trailer rig was a "covered auto" giving rise to a duty to defend); *State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d 448, 452-53 (Tex.App.– Corpus Christi 1992, writ denied) (considering extrinsic evidence to determine whether boat accident fell within "business use" policy exclusion); *Cook v. Ohio Cas. Ins. Co.*, 418 S.W.2d 712, 715-16 (Tex.Civ.App.– Texarkana 1967, no writ) (considering extrinsic evidence of who owned car involved in accident because the issue concerned coverage, not merits of plaintiff's claim in underlying case); *Int'l Serv. Ins. Co. v. Boll*, 392 S.W.2d 158, 161 (Tex.Civ.App.–Houston [1st Dist.] 1965, writ ref'd n.r.e.) (considering extrinsic evidence that insured had only one son because petition alleged that "son" caused car accident and policy named insured's son in coverage exclusion).[25]

---

[25]    Compare the following cases, which reject consideration of extrinsic evidence because such evidence engaged the substantive issue of the insured's liability in underlying case: *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, 267 F. Supp. 2d 601, 622 (E.D.
(continued...)

If the allegations in Concierge's Petition are deemed insufficient to raise Nautilus' duty to defend, then the Petition is one that fits the narrow exception defined in *Loving Home Care* and applied five months later by the Fifth Circuit in *Primrose Operating Co*.   It is "initially impossible to discern whether coverage is potentially implicated" because Concierge fails to allege anything about the time of manifestation of the mold and thus the claimed property damage.  The manifestation issue is a timing question pertinent to a "fundamental issue of coverage," namely, whether the occurrence of the manifestation of mold on the insured property was within the policy period.[26]  The proposed extrinsic evidence (uncontroverted in the summary judgment record) is that staff at the facility stated the issue of mold arose around April or May 2001, more than a month before the end of the policy period.  This information pertains merely to the manifestation issue, a coverage issue, and does not overlap with the merits of the claims.  Timing on the initial visibility of the mold does not contradict or bolster any allegations in the Petition and thus does not

---

[25]   (...continued)
Tex. 2003) (holding the court would not consider parties' stipulations because the evidence involved the liability of the insured in the underlying suit and did not go only to a fundamental coverage issue); *Landmark Chevrolet Corp. v. Universal Underwriters Ins. Co.*, 121 S.W.3d 886, 890-91 (Tex.App.–Houston [1st Dist.] 2003, pet filed) (refusing to consider extrinsic evidence that would establish covered claim that plaintiffs in underlying suit had not pleaded); *Tri-Coastal Contractors, Inc. v. Harford Underwriters Ins. Co.*, 981 S.W.2d 861, 863-64 (Tex.App.–Houston [1st Dist.] 1998, pet. denied) (refusing to consider extrinsic evidence of whether employer had paid employees' workers compensation benefits, where such a payment went to the merits of the lawsuit); *Gonzalez v Am. States Ins. Co.*, 628 S.W.2d 184, 187 (Tex.App.–Corpus Christi 1982, no writ) (refusing to consider extrinsic evidence regarding who owned equipment that injured plaintiff in underlying suit because such evidence engaged merits of defendant in underlying suit's liability).

[26]   The discussion in *Loving Home Care* of cases in which extrinsic evidence was permitted demonstrates that the three types of "fundamental issues of coverage," *see* 363 F.3d at 531, are illustrations, not strict limitations on the concept.

"engage the truth or falsity of any facts alleged in the underlying case."  *See Loving Home Care*, 363 F.3d at 531.  The unusual circumstances of this case fit within the narrow confines of the exception to the "eight corners rule," and the extrinsic evidence of manifestation of the mold is admissible on the issue of Nautilus' duty to defend.

Under both approaches to the duty to defend analysis, the Court concludes that Nautilus owes Nevco a defense against Concierge's claims arising from mold at Concierge's facility.

## V.    DUTY TO INDEMNIFY

Where, as here, there is a duty to defend, the issue of whether there is a duty to indemnify becomes nonjusticiable.  *See Loving Home Care*, 363 F.3d at 536.  Texas law generally prohibits the determination of the duty to indemnify before the conclusion of the underlying suit against the insured, *see id.*, which in the instant case may not occur for several years given the number of defendants in the Concierge lawsuit and the complexity of the claims asserted.  It appears that Nautilus' claim for declaratory judgment on its duty to indemnify should be dismissed without prejudice as nonjusticiable.  Accordingly, the parties must show cause by **July 21, 2005** why (1) Nautilus' duty to indemnify claim should not be dismissed without prejudice as nonjusticiable, and (2) final judgment should not be entered that Nautilus has a duty to defend.

## VI.    CONCLUSION AND ORDER

For each of the reasons set forth above, Defendant Nevco Waterproofing, Inc. has established entitlement to a defense by Nautilus Insurance Co. in *Concierge Care Nursing Centers, Inc. v. Adams Insurance Services, Inc.*, Cause No. 2002-15652, in the 151st District Court of Harris County, Texas.  Summary judgment sought by

Nautilus that it owes no such duty is denied.  It is therefore

ORDERED that Plaintiff Nautilus' Motion for Reconsideration [Doc. # 41] is **GRANTED**.  It is further

ORDERED that this Court's Memorandum and Order dated April 19, 2005 is **VACATED**.  It is further

ORDERED that Plaintiff Nautilus' Motion for Summary Judgment [Doc. # 24] is **DENIED.**  It is further

ORDERED that Nautilus shall **PROVIDE A DEFENSE** to Nevco Waterproofing, Inc. in the case of *Concierge Care Nursing Centers, Inc. v. Adams Insurance Services, Inc.*, Cause No. 2002-15652, in the 151st District Court of Harris County, Texas.  It is further

ORDERED that Nautilus and Nevco **MUST SHOW CAUSE** by **July 21, 2005** why (1) Nautilus' duty to indemnify claim should not be dismissed without prejudice as nonjusticiable, and (2) final judgment should not be entered that Nautilus has a duty to defend.

**SIGNED** at Houston, Texas, this **11th** day of **July, 2005**.

Nancy F. Atlas
United States District Judge